1
2
3
4
5
6                   IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Darrell Christopher Danner,          )   No. CIV 09-0191-PHX-JWS (DKD)
                                         )
10               Petitioner,             )
                                         )
11  vs.                                  )   **REPORT AND RECOMMENDATION**
                                         )
12  Charles Ryan, et al.,                )
                                         )
13               Respondents.            )
                                         )
14  _____     )

15  TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

16          Darrell Christopher Danner filed a timely petition for writ of habeas corpus pursuant

17  to 28 U.S.C. § 2254, challenging his convictions for second-degree murder and fleeing the

18  scene of an accident, and the trial court's imposition of consecutive prison terms totaling 23

19  years.  Danner raises fourteen grounds for habeas relief, alleging errors that occurred during

20  the trial proceedings and his sentencing, and raising eight claims of the ineffective assistance

21  of trial counsel.  Respondents contend that four of the grounds raised are not cognizable on

22  federal habeas review and/or are unexhausted and procedurally defaulted.  In addition,

23  Respondents contend that the remaining ten grounds are without merit.  The Court agrees that

24  four of the grounds are barred from review, and that the remaining ten grounds are without

25  merit.  The Court therefore recommends that Danner's petition be denied and dismissed with

26  prejudice.

27
28

# BACKGROUND

The facts surrounding the charged offenses are summarized in the court of appeals memorandum decision:

> Defendant was driving a Ford Expedition north on Scottsdale Road in the late at night. [sic] A witness stopped at a red light saw Defendant drive onto a median behind her as Defendant approached a turn lane. Another witness also observed Defendant flashing his lights and sounding his horn while facing a red light. When the light turned green, Defendant swerved and drove onto the shoulder while entering on the on-ramp for the State Route 101 Freeway. As he did so, Defendant nearly struck the first witness' vehicle.
>
> Defendant entered Route 101. The first witness observed Defendant swerve while driving on Route 101. Defendant sped past a third witness, who decided to pace Defendant to determine Defendant's speed. This witness reached 110 miles per hour but was unable to overtake Defendant. The witness then slowed because of an upcoming construction site.
>
> Near the construction site, three freeway lanes had merged into two, and the freeway curved. The speed limit was reduced from sixty-five to forty-five miles per hour. Lining the road at the construction site were cement barriers.
>
> As Defendant approached the construction site and curve, he was driving nearly 100 miles per hour. The third witness, who had not reached the curve but was still driving behind Defendant, then observed headlights, taillights, and debris. As the witness drew close, he saw a pickup truck smashed against the concrete barrier. Defendant's vehicle had slid underneath the rear of the truck. The witness telephoned 911.
>
> According to another witness who had driven upon the accident, Defendant attempted to flee. The wheels of his entangled vehicle spun as he tried to move in reverse gear. Defendant ultimately extricated his vehicle from the truck and proceeded on the freeway. Two witnesses followed Defendant, who was driving between eighty-five and ninety miles per hour with a deflated front tire. Defendant exited the freeway after two miles and stopped.
>
> Police officer French arrived and approached Defendant, still sitting in his vehicle. Defendant denied that he had been injured. French saw that the inside of Defendant's vehicle was disorderly, with papers and other items tossed about, and that the air bags had deployed. Defendant denied being in an accident, even after the officer indicated the vehicle's extensive exterior damage and deployed air bags. Officer French noticed that Defendant's face was slack, his eyes were bloodshot and he

- 2 -

swayed while seated.  Defendant answered the cellular phone, but cut the conversation short, telling the caller he could not talk because he had been in an accident.

Defendant initially refused the officer's numerous requests to exit the vehicle.  When Defendant finally relented, he exited awkwardly and unsteadily attempted to stand.  He eventually had to lean against his vehicle.

Defendant told Officer French he had consumed two beers.  Although it was about 1:30 a.m., Defendant looked at his watch and twice told the officer it was 2:30 a.m.  With slurred speech, Defendant informed French that his last drink was an hour before.  Defendant refused to submit to field sobriety tests.  After Defendant told the officer he was in pain, the officer arranged to have Defendant taken to a hospital.

Defendant's blood was drawn pursuant to a search warrant at the hospital.  Test results later showed that at about 4:30 a.m., Defendant's blood alcohol content ("BAC") was .173.  At the hospital, Officer Mueller noticed Defendant's bloodshot eyes.  Mueller also observed Defendant's erratic mood swings.

At Defendant's trial, Detective Coleman testified that the accident had occurred when Defendant, driving between 97 and 112 miles per hour, struck the rear of the victim's truck with the front of Defendant's Expedition.  This collision caused the truck to rotate and strike the concrete barriers.  The truck continued down the emergency lane and began to roll.  Defendant's vehicle, which had also rotated, collided with the truck again, striking the truck's exposed undercarriage.  The driver of the truck died at the scene.  An autopsy later revealed that the victim's BAC was .11 at the time of death.

The State moved in limine to exclude evidence of the victim's BAC as irrelevant.  Defendant replied that although he had hired an accident reconstructionist, he had not yet determined whether the victim's conduct had caused the accident.  After deferring a decision, the superior court later ruled the evidence irrelevant, absent a defense that rendered the evidence relevant.

Defendant did not present a theory for which the victim's BAC level would be relevant.  He also presented no evidence.  His defense was that he was guilty not of murder, but only of manslaughter or negligent homicide.

A jury convicted Defendant of second-degree murder and fleeing the scene of an accident.  The superior court sentenced Defendant to eighteen years of imprisonment for murder, and five years of imprisonment for the class three felony of fleeing the scene.

1   (Doc. 9, Attachment 1, ROA Item 142, memorandum decision at 2-5).

2        On direct review, Danner raised three errors that he maintained required reversal: (1)

3   the murder conviction should be vacated because the State failed to prove causation; (2) the

4   trial court erred in excluding evidence of the victim's intoxication; and (3) the trial court

5   incorrectly instructed the jury about leaving the scene of an accident, requiring a reduction

6   in the conviction to a class 4 felony (*Id*., Exh A-C). The court of appeals affirmed the

7   convictions and sentences. In doing so, the court concluded there was sufficient evidence

8   of causation, including Danner's excessive and unsafe speed, erratic driving, and the manner

9   in which the accident occurred (*Id*., memorandum decision at 6-8). The court of appeals also

10   determined that evidence of the victim's blood alcohol level was properly excluded because

11   Danner had never offered a theory of the case which the evidence would support (*Id*. at 8).

12   Finally the court of appeals rejected Danner's argument that the instruction on fleeing the

13   scene required a finding that he caused the accident. The court of appeals concluded the

14   error, if any, was harmless in light of the overwhelming evidence supporting causation and

15   his failure to offer any contradictory evidence of causation (*Id*. at 9-11). Danner petitioned

16   for review in the Arizona Supreme Court; review was denied.

17        On July 2, 2004, Danner filed a Notice of Post-Conviction Relief. On July 10, 2006,

18   Danner, through appointed counsel, filed a petition, alleging the violation of Danner's

19   constitutional rights on four grounds. Danner first claimed that he received the ineffective

20   assistance of trial counsel. Specifically, he argued that trial counsel was unprepared to

21   litigate the case, citing several examples. He contended that trial counsel (1) did not object

22   to the trial being held *in absentia*; (2) stipulated to chain of custody witnesses; (3) failed to

23   request a voluntariness hearing; (4) presented an ineffective opening statement; (5) failed to

24   object to the police obtaining a search warrant for Danner's blood; (6) was unprepared to

25   cross-examine the State's witnesses and had no theory of defense; (7) allowed the admission

26   of gruesome photographs; (8) failed to request lesser-included instructions until the

27

28                              - 4 -

conclusion of the trial; (9) presented an ineffective closing argument; (10) failed to investigate fact witnesses; and (11) failed to investigate expert witnesses.

Danner also argued that he was not competent to proceed to trial. In addition, he claimed two sentencing errors: (1) the trial court aggravated his sentence based upon factors not found by the jury or admitted by Danner; and (2) his five-year sentence for leaving the scene of an accident exceeded the statutory maximum of three years (Doc. 9, ROA, Item 216).

On October 25, 2006, the State filed its opposition to the PCR petition. It argued that Danner was not prejudiced by counsel's failure to object to his client being tried *in absentia* because the record is clear that the trial court would not have allowed any further continuances in the case, having made clear to Danner that the case would be tried, *with or without him present*, on the scheduled date. The State countered Danner's claim regarding counsel's alleged ineffectiveness because of a stipulation on "chain of custody witnesses and things of that nature" as insufficient, because it was unsupported by any documentation or analysis. Regarding trial counsel's failure to request a voluntariness hearing, the State pointed out that the factors to be considered by the trial judge in determining voluntariness envision the assistance of a defendant, something that Danner precluded in this case by absconding prior to trial.

The State similarly responded to Danner's claim that trial counsel was ineffective for giving a "canned opening statement about the American justice system" and saying nothing on Danner's behalf. The State argued that Danner's failure to appear at trial put his trial counsel in the very difficult position of litigating a homicide case without a client. Given such circumstances, the State argued that such an opening statement could not form the grounds for an ineffective assistance claim. The State further argued that the prosecutor's comments in opening statement about obtaining a search warrant in order to get a sample of Danner's blood and the circumstances involved in obtaining the sample were both proper and therefore counsel was not deficient for failing to object. Danner's argument that trial counsel

1   was unprepared to cross-examine witnesses and had no theory of defense was also challenged

2   by the State.  The State noted that a more vigorous cross-examination of witnesses was made

3   difficult without the cooperation of his client.  The State also argued that trial counsel's

4   stipulation to the admission of the least gruesome photographs of the victim was sound trial

5   strategy.  The State further argued that Danner suffered no prejudice by trial counsel's failure

6   to request lesser-included instructions until the conclusion of the trial because such

7   instructions were eventually given to the jury.  The State countered Danner's claim that

8   counsel presented an ineffective closing argument, citing the portion of his argument where

9   he contends that the evidence supported a conviction for the lesser-included crimes of

10  manslaughter and/or negligent homicide.  The State also challenged Danner's claim that trial

11  counsel should have interviewed those who were with Danner shortly before the fatal

12  collision, because in light of the overwhelming evidence of his guilt, he could show no

13  prejudice.  For the same reason, the State challenged Danner's claim that trial counsel should

14  have called an accident reconstruction expert and a criminalist.

15          The State contended that Danner's claim that he was not competent to stand trial

16  because of the anti-depressant medication he was taking was precluded because he could

17  have raised it on direct review.  It also argued that the claim was without merit, based upon

18  speculation, and without support in the record.  Finally, the State asserted that Danner's

19  sentencing claims were both precluded.  It argued that the *Blakely* claim was precluded due

20  to Danner's failure to raise it on direct review.  It also argued that his claim that the sentence

21  imposed was statutorily excessive for a class three felony was precluded because it had been

22  previously litigated on direct review (Doc. 9, ROA, Item 216).

23          On November 20, 2006, the trial court summarily dismissed Danner's petition for the

24  reasons stated in the State's opposition (*Id.*, ROA, Item 222).  On December 18, 2006,

25  Danner sought review in the court of appeals; on October 3, 2007, review was denied (Doc.

26  9, Exh L-O).  On February 7, 2008, Danner's petition for review in the supreme court was

27  denied (*Id.*, Exh P, Q).

28                                          - 6 -

1    Danner raises fourteen grounds for relief in his habeas petition, alleging that his

2    constitutional rights under the fifth, sixth, eighth, and fourteenth amendments were violated

3    as follows:

4    I.    The State failed to establish that Danner caused the accident;

5    II.   The trial court improperly precluded evidence of the victim's blood alcohol

6    level at the time of the accident;

7    III.  The trial court improperly sentenced Danner for a class three felony;

8    IV.   The trial court improperly sentenced Danner to a five-year term for leaving the

9    scene when the maximum term for that offense is three years;

10   V.    The trial court violated Danner's right to have a jury determine the existence

11   of aggravating factors; and

12   VI.   The trial was conducted while he was not competent to proceed because of

13   medication he was taking;

14   Danner also argues that trial counsel was ineffective as follows:

15   VII.  Failing to call exculpatory witnesses;

16   VIII. Failing to secure experts to establish a defense and confront the State's case;

17   IX.   Failing to object to trying Danner *in absentia*;

18   X.    Failing to prepare for and to make an effective opening statement;

19   XI.   Failing to prepare for and properly cross-examine the State's witnesses;

20   XII.  Failing to object to the admission of gruesome photographs;

21   XIII. Failing to prepare for and properly consider applicable law prior to trial; and

22   XIV.  Failing to prepare for closing arguments by fully acquainting himself with the

23   law.

24   **EXHAUSTION OF REMEDIES**

25   A state prisoner must exhaust his state remedies before petitioning for a writ of habeas

26   corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-

27   66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).  To properly exhaust

28

state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. at 730-31. In such cases, federal habeas review is precluded if the state court opinion

- 8 -

contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260.  A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim.  *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002).  A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default.  *See Coleman*, 501 U.S. at 750-51.

In his second ground, Danner contends that the trial court violated his constitutional rights to present a defense by improperly precluding evidence of the victim's blood alcohol level at the time of the accident.  Respondents contend that this ground was not fairly presented in the state court, and is therefore not properly exhausted.  The Court agrees. Danner's argument to the court of appeals was that the evidence was relevant, citing Rule 401 of the Arizona Rules of Evidence.  The court of appeals' analysis was also limited to the question of relevance under state evidentiary rules.  *See* ROA, Item 142 at 8-9.  The claim was not fairly presented because Danner did not describe a federal legal theory on which the claim is based in state court.  *Bland.*  The exhaustion requirement has therefore not been met. *Roettgen*, 33 F.3d at 38.

In his fourth ground, Danner argues that the trial court exceeded the maximum sentence allowed for fleeing the scene of an accident.  In his fifth ground, Danner contends that the trial court violated his right to have a jury determine the existence of aggravating

1   circumstances.[1]    In his sixth ground, Danner contends that the State violated his

2   constitutional rights by holding his trial *in absentia* while he was not competent to proceed

3   based upon the anti-depressant medication he was taking.  All three of these claims were

4   found precluded by the trial court because he either had or could have previously litigated

5   the same issue on appeal.  Because the claims were rejected pursuant to an independent and

6   adequate state procedural rule, federal habeas review is precluded.  *See Harris*, 489 U.S. at

7   260.  Finally, Danner has shown no cause or prejudice to excuse the default on any of the

8   barred claims.  *See Coleman*, 501 U.S. at 750-51.

9                                              **MERITS DISCUSSION**

10          In his first ground, Danner argues that the State failed to prove that he caused the

11  accident, thus violating his constitutional rights.  In order for him to be granted relief on this

12  claim of insufficient evidence, he must establish that "no rational trier of fact could have

13  found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  In

14  addition, Danner must demonstrate that the state court's decision was an unreasonable

15  application of *Jackson*.  *See Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).  This

16  is a burden he cannot meet.  The court of appeals found "ample evidence" that Danner's

17  recklessness caused the accident, and termed the evidence, although circumstantial, "very

18  powerful."  This evidence included his excessive and unsafe speed, erratic driving, and the

19  manner in which the accident occurred.

20

21

22          [1]On July 7, 2004, Danner filed a Motion for Remand to State Court for Resentencing,
    citing *Blakely*, which had been decided on June 24, 2004.  On July 14, 2004, the Arizona
23  Supreme Court ordered the Attorney General to file a response to Danner's petition for
    review in light of *Blakely*.  In its response, the Attorney General argued that Danner's
24  *Blakely* claim was precluded because Danner could have raised the sentencing issue on direct
    review as an *Apprendi* sentencing error: *Apprendi* allowed Danner the basis to argue that the
25  sixth amendment governs sentences above the statutory maximum.  On September 23, 2004,
26  the supreme court denied review and denied Danner's Motion for Remand to State Court for
    Resentencing.
27

28

1    In his third ground, Danner contends that the trial court violated his constitutional

2 rights when it sentenced him for a class 3 felony rather than a class 4 felony, without

3 previously instructing the jurors on causation.[2]   The court of appeals concluded that the

4 failure to instruct on causation was not fundamental error for several reasons.  Danner never

5 argued or presented any evidence that he had not caused the accident.  In addition, the court

6 of appeals found substantial evidence of causation, and that the jury necessarily found that

7 he caused the death by returning a guilty verdict for second-degree murder.  *See* ROA, Item

8 142 at 10-11.  Danner is not entitled to habeas relief for any constitutional error in state court

9 unless the error had a "substantial and injurious effect or influence in determining the jury's

10 verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Given the overwhelming

11 evidence of guilt presented to the jury, Danner has not met this burden, and this ground for

12 relief fails.

13    In the remaining grounds for relief, Danner alleges several claims of ineffective

14 assistance of trial counsel.  In his ninth ground, Danner argues that counsel was ineffective

15 in failing to object to a trial *in absentia*.  A review of the record reflects that the trial court

16 had previously granted Danner two continuances of the trial.  At the time when the trial court

17 granted the second continuance, Danner was specifically warned by the trial judge that his

18 failure to appear [3] for the scheduled trial date could result in Danner being tried *in absentia*.

19 Danner indicated that he understood this.  *See* R.T. 8/19/02 at 7-8.  Following this explicit

20

21

22    [2]A.R.S. § 28-611(B) provides:

23    A driver who is involved in an accident resulting in death or serious physical
24 injury as defined in section 13-105 and who fails to stop or to comply with the requirements
   of section 28-633 is guilty of a class 4 felony, except that if a driver caused the accident the
25 driver is guilty of a class 3 felony.

26    [3]The trial court's warning came in the wake of the State's request to revoke Danner's
27 release on the grounds that the State had received a silent witness tip that Danner was in the
   process of making false identification and was planning to leave the country.

28

1   warning, and Danner's flight two weeks later, any objection counsel would have made would

2   most certainly have been overruled.  Counsel was not required to make a futile objection.

3       In his tenth ground, Danner contends that counsel was ineffective for failing to

4   prepare and make an effective opening statement.  The decision whether to make an opening

5   statement is a matter of trial strategy, and as such cannot form the basis of a claim of

6   ineffective assistance.  *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir.

7   1985).  Indeed, the decision to forego an opening statement can be sound trial strategy,

8   because it leaves the defense "uncommitted to a particular position and thus free to develop

9   any defense that might materialize as the State present[s] its case." *Jones v. Smith*, 772 F.2d

10  668, 674 (11th Cir. 1985).  Danner's failure to appear put counsel in a very difficult position,

11  and coupled with the strength of the State's case, counsel was wise to make the argument a

12  short one, emphasizing the importance of the proceeding, and asking the jury to weigh the

13  facts and make the State prove each element of the case.  *See* R.T. 10/9/02 at 165-66.

14      In his eleventh ground, Danner argues that trial counsel was ineffective in failing to

15  prepare for and properly cross-examine the State's witnesses.  Danner generally complains

16  about the "ineffectiveness" of counsel merely repeating a witness's testimony, and

17  specifically asserts that counsel failed to correct false testimony or dispute the reading of a

18  witness's notes.  Given the great deference afforded to tactical decisions made by trial

19  counsel, and the strength of the State's case, counsel's decision regarding cross-examination

20  of the witnesses he had previously interviewed can only be viewed as objectively reasonable

21  conduct.  *Rodriguez-Ramirez*, 777 F.2d at 458.

22      In his twelfth ground, Danner alleges that counsel was ineffective in stipulating to,

23  and failing to object to, the admission of gruesome photographs.  The record reflects that

24  counsel's decision was a tactical one:  agreeing to allow the jury to see less gruesome

25  photographs to establish the cause of death, in order to avoid having the medical examiner

26  testify.  In light of the overwhelming evidence, there is no reasonable probability that the jury

27

28

1    would not have convicted Danner if they had been shown less-graphic photographs. *State*

2    *v. Spreitz*, 190 Ariz. 129, 143 (1997).

3        In his seventh ground, Danner contends ineffective assistance as a result of counsel's

4    failure to call exculpatory witnesses.  Specifically, he argues that counsel was ineffective for

5    failing to call those individuals who had been his drinking companions in the hours before

6    the fatal collision, to testify as to the amount of alcohol he consumed.  None of the excerpts

7    of these witnesses' depositions cited by Respondents indicate testimony that would in any

8    way be exculpatory.  What a drinking companion may have remembered about the amount

9    of alcohol Danner consumed does not in any way negate the testimony of eyewitnesses who

10   saw his aggressive and reckless driving thereafter, the measurement of his blood alcohol

11   level, and the testimony of those who observed him after he fled the scene of the accident.

12   The Court agrees with Respondents that at best, the proposed testimony emphasizes that

13   "during the entire evening before Petitioner rear-ended [the victim's] truck with a blood

14   alcohol level of .218, he had been 'partying' with friends, and drinking large quantities of

15   hard liquor."  Counsel's decision was well within the range of professionally reasonable

16   judgment.  Again, in light of the overwhelming evidence, Danner cannot establish prejudice.

17       In his eighth ground, Danner contends that counsel was ineffective for failing to

18   secure experts to establish a defense and counter the State's case.  "[T]he presentation of

19   expert testimony is not necessarily an essential ingredient of a reasonably competent

20   defense."  *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995).  As Respondents point out,

21   the proposed testimony would have only further emphasized the Danner was highly

22   intoxicated more than three hours earlier, when the collision occurred.  His own retained

23   criminalist concluded that Danner was intoxicated, conceding that his blood alcohol level

24   was .151%, three or four hours after Danner had been eliminating alcohol from his

25   bloodstream. *See* Doc. 9, ROA, Item 206, Exh J.  The same reasoning would apply to his

26   claim that counsel should have employed an accident reconstruction expert. Danner does not

27   explain why that would have been a reasonable decision, given the presence of three

28
                                          - 13 -

1    witnesses who had observed his extremely reckless behavior prior to the accident, and that

2    he fled the scene immediately thereafter.  In addition, the proposed testimony would have

3    confirmed that Danner was traveling at approximately 105 miles per hour, and rammed into

4    the rear end of the victim's truck.  *See Id.*, Exh E.  In light of the overwhelming evidence of

5    Danner's guilt, the proposed testimony that Danner was unable to negotiate the curve

6    because the victim was partially in the emergency lane does not come close to constituting

7    an intervening, superceding cause that breaks the causal chain.

8        In his thirteenth ground, Danner contends that counsel was ineffective for failing to

9    prepare for and properly consider the applicable law prior to trial.  Specifically he argues that

10   (1) counsel did not request a lesser-included offense instruction prior to the conclusion of the

11   trial; (2) did not argue that Danner was not guilty of second degree murder, because he had

12   not caused the accident, but was guilty of the lesser-included offense of reckless driving; and

13   (3) counsel's defense of mistaken identity was absurd, and was never raised in opening

14   statement or argued to the jury in closing argument.  All of these claims fail.

15       The record reflects that the State submitted its requested jury instructions, including

16   instructions on both second degree murder and the lesser-included offenses of manslaughter

17   and negligent homicide, prior to the beginning of the trial.  *See* Doc. 9, ROA, Item 72.

18   During the trial, the trial court provided the parties with draft instructions, and indicated its

19   inclination not to give any lesser-included instruction.  *See* R.T. 10/10/02 at 178-79.  When

20   asked whether he was still requesting such an instruction, the prosecutor deferred to defense

21   counsel, who specifically requested the lesser-instructions and the trial court gave those

22   instructions.  *See* R.T. 10/10/02 at 179; ROA, Item 82 at 8-9.  Defense counsel was not

23   required to submit lesser-included instructions when the State had already done so.  In

24   addition, after having heard the trial court's view that the evidence did not support the giving

25   of such an instruction, and the prosecutor's willingness to proceed without them, counsel

26   spoke up and specifically requested the instructions.  Danner suffered no prejudice because

27   counsel requested and received the instructions.

28

- 14 -

1    Danner also suggests that counsel was deficient for not defending the second degree

2    murder charge on the grounds that he did not cause the accident and for not seeking a jury

3    instruction on the lesser offense of reckless driving.  First, there was overwhelming evidence

4    that Danner caused the accident.  In addition, it's not credible that the jury may have opted

5    for the offense of reckless driving instead of second degree murder, given their rejection of

6    both manslaughter and negligent homicide, in favor of the greater offense.

7    Danner further argues that counsel's defense of mistaken identity shows a lack of

8    preparation.  Counsel did not argue mistaken identity; he cross-examined the arresting officer

9    about his present recollection of Danner, and objected to another witness being shown his

10   booking photo after that witness's description did not match the booking photo.  *See* R.T.

11   10/15/02 at 18-20; R.T. 10/10/02 at 11-15.  Both were reasonable actions, given Danner's

12   absence from the courtroom, thereby precluding either witness from identifying him in

13   person.

14   In his fourteenth ground, Danner argues that counsel failed to prepare for closing

15   argument by fully acquainting himself with the law.  Given the great deference afforded to

16   a trial counsel's summation, especially on federal habeas review, the record reflects that trial

17   counsel worked with what little he had to try to convince the jury that despite the fact that

18   Danner drank too much and killed the victim, his conduct fell within the lesser charges of

19   manslaughter or negligent homicide.  He argued that Danner had not intended to kill the

20   victim, and that the jury should hold him accountable for what he did, not what the State

21   charged.  *See* R.T. 10/15/02 at 112-113, 125.  He pointed out the element of "extreme

22   indifference for human life" required for second degree murder, and pointed out that

23   although Danner may have been drunk, he could not anticipate the curve ahead, or the

24   construction zone.  *Id.* at 127, 128.  He also thoroughly reviewed the instructions for the

25   lesser offenses, and told the jurors that the facts of the case fell somewhere between criminal

26   negligence and manslaughter.  *Id*. at 127.  He also urged them more than once to put their

27

28                                             - 15 -

1    emotions aside and look at the instructions.  *Id.* at 129.  The fact that he could have made

2    other arguments does not mean he was deficient for failing to include them.

3        Finally, Danner requests an evidentiary hearing.  Whether to grant an evidentiary

4    hearing *when material facts are in dispute* generally lies within the discretion of the district

5    court judge.  *See Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled in part by Keeney*

6    *v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187

7    F.3d 1075, 1077-78 (9th Cir. 1999).  Because the Court concludes that material facts are not

8    in dispute, it denies Danner's request for an evidentiary hearing.

9        **IT IS THEREFORE RECOMMENDED** that Darrell Christopher Danner's petition

10   for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. 1).

11       **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

12   to proceed *in forma pauperis* on appeal be **denied** either because dismissal of the Petition is

13   justified by a plain procedural bar and jurists of reason would not find the ruling debatable,

14   or because Danner has not made a substantial showing of the denial of a constitutional right.

15       This recommendation is not an order that is immediately appealable to the Ninth

16   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

17   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

18   parties shall have fourteen days from the date of service of a copy of this recommendation

19   within which to file specific written objections with the Court.  *See*, 28 U.S.C. § 636(b)(1);

20   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have seven

21   days within which to file a response to the objections.  Failure timely to file objections to the

22   Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

23   and Recommendation by the district court without further review.  *See United States v.*

24   *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any

25   factual determinations of the Magistrate Judge will be considered a waiver of a party's right

26

27

28

to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 19th day of November, 2010.

_____
David K. Duncan
United States Magistrate Judge

- 17 -